UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD A. JODREY,                          Case No. 1:12-cv-725
     Plaintiff,                           Barrett, J.
                                            Litkovitz, M.J.

     vs.


COMMISSIONER OF                             REPORT AND
SOCIAL SECURITY,                            RECOMMENDATION
     Defendant.


     Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI).  This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum.  (Doc. 19).

**I.  Procedural Background**

     Plaintiff filed applications for DIB and SSI in June 2006, alleging disability since January 1, 2004, because he was "Bipolar and suicidal."  (Tr. 241).  These applications were denied initially and upon reconsideration.  Following a hearing, administrative law judge (ALJ) Deborah Smith issued a decision on May 18, 2009, finding that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 88-102).  Plaintiff filed a request for review to the Appeals Council.  (Tr. 161).

     In the meantime, plaintiff filed new applications for DIB and SSI on June 1, 2009, alleging disability since June 1, 2006[1].  (Tr. 225-34).  Plaintiff was notified in a letter dated

---

[1] Plaintiff amended his alleged onset date from January 1, 2004 to June 1, 2006.  (Tr. 45, 350).

September 17, 2009, that he was found to be disabled by the State Agency and entitled to SSI only beginning June 1, 2009.  (Tr. 165-174).

On January 13, 2010, the Appeals Council sent plaintiff a "Notice of Order of Appeals Council Remanding Case to Administrative Law Judge."  (Tr. 111-114).  The Order stated that the Appeals Council had granted review of the prior ALJ decision and reopened the favorable determination made on June 1, 2009.  (Tr. 112).  The Order further stated that the Appeals Council was remanding the matter so that the ALJ could reconcile the inconsistency between: (1) the May 18, 2009 ALJ decision finding that plaintiff was not disabled between the amended alleged onset date of June 1, 2006 and the date of the ALJ's decision, and (2) the State Agency's determination on the subsequent application that plaintiff became disabled only 12 days after the ALJ's decision on June 1, 2009, based solely on a medical source statement from Brown County Recovery Services dated July 6, 2009.  (*Id*.).  The Order stated that the favorable determination on the subsequent application was based largely on a mental status questionnaire completed by Dr. E. Friedeman, whereas the ALJ had given "little weight" to Dr. Friedeman's opinions even though he was plaintiff's treating physician at Brown County Recovery Services.  (Tr. 113).

On remand, the ALJ was directed to: (1) reconcile the inconsistency between a decision that found plaintiff not disabled on May 18, 2009, and a subsequent application finding plaintiff became disabled on June 1, 2009; (2) to the extent necessary after reconciling these two decisions, give further consideration to plaintiff's maximum residual functional capacity (RFC) during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations, and in doing so, evaluate the medical source opinions and explain the weight given to each opinion in accordance with Social Security rulings and

regulations; and (3) if warranted by the expanded record, obtain supplemental evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on plaintiff's occupational base, with the hypothetical questions reflecting the specific capacity/limitations established by the record as a whole.  (*Id.*).

The ALJ held a hearing pursuant to the Appeals Council's remand order on October 5, 2010.  Plaintiff and a VE appeared and testified at the hearing.  (Tr. 33-58).  On November 16, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI applications.  (Tr. 9-25). Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.  (Tr. 1-3).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff met] the insured status requirements of the Social Security Act only through June 30, 2008.

2. The [plaintiff] has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: depression; bipolar disorder; anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [plaintiff] is able to perform simple, routine, repetitive work without strict production standards.  He should perform work where he does not have contact with the general public.  He is also best suited to jobs where he can work alone without frequent contact with coworkers.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1965 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 1, 2004, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-24).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[2] Plaintiff's past relevant work was as a silk screen printer and home repair worker.
[3] The ALJ found that an individual with plaintiff's limitations would be able to perform the requirements of representative occupations such as unskilled medium industrial cleaner (8,700 regional jobs and 1,041,000 national jobs); unskilled medium press operator (207 regional jobs and 39,000 national jobs); unskilled light cleaner (2,000 regional jobs and 364,000 national jobs); unskilled sedentary weight tester (100 regional jobs and 90,000 national jobs); and unskilled sedentary surveillance system monitor (100 regional jobs and 16,300 national jobs).  (Tr. 24).

substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## III.  Specific Errors

The pertinent medical findings and opinions have been adequately summarized in plaintiff's Statement of Errors and will not be repeated here.  (Doc. 12 at 4-17).  Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that: (1) the ALJ erred by failing to properly weigh the opinions of his treating physician, Dr. E. Friedeman, M.D.; (2) the ALJ improperly discounted plaintiff's credibility and subjective complaints; (3) the ALJ failed to consider a third-party statement completed by plaintiff's father; and (4) the ALJ erred by relying on an improper hypothetical posed to the VE, which did not constitute substantial evidence of plaintiff's vocational abilities.  (Doc. 12).

**A.  The ALJ erred by failing to give controlling weight to plaintiff's treating psychiatrist.**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion.  *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the length, nature and extent of the treatment relationship and the frequency of examination.  20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'"  *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[1]).  *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).  Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

Plaintiff contends that the ALJ erred by failing to give controlling or deferential weight to the assessment of his treating psychiatrist, Dr. Friedeman, in violation of the treating physician

---

[1] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012.  The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

rule, 20 C.F.R. §§ 404.1567(c)(2), 419.627(c)(2), and Social Security Ruling 96-2p (1996).[2]
(Doc. 12 at 17-20; Doc. 19).  Plaintiff contends that Dr. Friedeman's opinion is consistent with
the weight of the objective medical evidence of record, specifically, the counseling notes of Ms.
Martha Thomas-Turner, APRN, and Ms. Dora Cooksey, LSW; consistent with the opinions of
consultative examining psychologist Dr. Norman Berg, Ph.D., and state agency reviewing
psychologist Dr. William Benninger, Ph.D.; and supported by Dr. Friedeman's own treatment
records.

The Commissioner responds that the ALJ properly evaluated Dr. Friedeman's opinions
and decided to afford them little weight.  (Doc. 18 at 6-8).  The Commissioner argues that the
ALJ considered the evidence of record and concluded that Dr. Friedeman's conclusions were
inconsistent with the weight of the objective medical evidence of record; were not fully
supported by his treatment records; and seemed to be primarily based upon plaintiff's subjective
complaints.  The Commissioner contends that the ALJ considered but found unpersuasive the
opinions of: (1) plaintiff's social worker, Ms. Cooksey, (2) plaintiff's counselor, Ms. Thomas-
Turner (3) consultative examining psychologist, Dr. Berg, and (4) non-examining state agency
psychologist, Dr. Benninger.  The Commissioner notes that the ALJ stated she was giving some
weight to the opinion of the non-examining state agency psychologist, Dr. Cynthia Waggoner,
Psy.D., but properly found that additional evidence received after the date of her opinion showed
the need for slightly greater limitations than she had imposed.  (*Id*., citing Tr. 13, 445-62).

### 1.  Dr. Friedeman's Reports

---

[2] Plaintiff does not allege that the ALJ erred in assessing the medical source opinions related to his physical
impairments.  (Doc. 9).  Accordingly, the Court has confined its analysis of the assignment of error to plaintiff's
mental impairments.

The record includes three mental status questionnaires completed by Dr. Friedeman, the psychiatrist who has treated plaintiff since November 2004 (Tr. 540): (1) a daily activities questionnaire completed on behalf of the state agency on August 29, 2006 (Tr. 539-41); (2) a mental impairment questionnaire dated November 21, 2006 (Tr. 485-90); and (3) a mental status questionnaire completed on behalf of the state agency in February 2007 (Tr. 534-36).

In the August 2006 questionnaire, Dr. Friedeman reported that plaintiff had been "Bipolar depressed" for at least 15 years. (Tr. 540). Plaintiff's medications included Abilify, Klonopin, Lamictal and Lunesta. (*Id*.). Dr. Friedeman described plaintiff as presenting with "very bloodshot eyes" and looking tired and lost. (Tr. 539). Dr. Friedeman reported that plaintiff's flow of conversation and speech was halting and sparse; his mood and affect were labile and hopeless; and he showed signs of anxiety through poor sleep, tense posture, and "grasping/wringing." (*Id*.). Dr. Friedeman noted that plaintiff reported poor concentration, and Dr. Friedeman reported that plaintiff seemed to "have poverty of content." (*Id*.). Plaintiff's concentration was impaired but he had an average fund of information and intact recent and remote memory. (*Id*.). Dr. Friedeman reported that plaintiff had a dependent relationship on his girlfriend, poor insight, and fair judgment. (*Id*.). Dr. Friedeman opined that plaintiff was able to remember, understand and follow directions to a "limited degree," stating that he required directions to be repeated. (Tr. 540). Dr. Friedeman stated that plaintiff "[h]as to <u>really</u> work at maintaining attention." (*Id.*) (emphasis in original). Dr. Friedeman reported that plaintiff had a "very poor record of persisting at and finishing tasks," stating that he worked in home improvement and left most jobs unfinished. (*Id.*). Dr. Friedeman also reported that plaintiff's social interaction was "very poor," he was scared, and he "has ideas of reference." (*Id.*). Plaintiff's ability to adapt was "poor" as he had limited ability to think flexibly. (*Id*) In

10

describing how plaintiff would react to the pressures in work settings or elsewhere involving simple and routine or repetitive tasks, Dr. Friedeman responded: "He would have difficulty reacting and using feedback as he gets easily overwhelmed, anxiety quickly escalates and self deprecating thoughts comes [sic] in for the kill (He quits/runs)." (*Id.*).

In the November 2006 questionnaire, Dr. Friedeman reported that plaintiff had therapy every month and met with the psychiatrist once every one to two months, with plaintiff's financial problems prohibiting more frequent sessions. (Tr. 486). Plaintiff's diagnosis was listed as "Bipolar disorder-depressed" and his current GAF was assessed at 45-50, with 50 being the highest GAF over the past year. Dr. Friedeman reported that plaintiff's response to treatment was a "slow response, and weak at that." (*Id.*). He reported that plaintiff had "initial positive responses that are not robust and we continue to work toward an effective medication regimen." (*Id.*). Dr. Friedeman reported that plaintiff complained of chronic disabling anxiety and depressed mood. (*Id.*). He stated that although plaintiff had brief hypomania in the past, he was predominantly depressed with feelings of "worthlessness, hopelessness, social phobia, and isolation." (*Id.*). Dr. Friedeman described plaintiff's prognosis as "guarded." (*Id.*). Dr. Friedeman described the following limitations in plaintiff's mental abilities and aptitudes needed to do unskilled work: plaintiff was "seriously limited, but not precluded[4]" in his ability to remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; and be aware of normal hazards and take appropriate

---

[4] The questionnaire defined the degrees of limitation as follows: "seriously limited, but not precluded" meant the ability to function was "seriously limited and less than satisfactory, but not precluded in all circumstances"; "unable to meet competitive standards" meant an inability to "satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting"; and "no useful ability to function" was defined as "an extreme limitation, means your patient cannot perform this activity in a regular work setting." (Tr. 488).

precautions.  (Tr. 488).  Plaintiff was "unable to meet competitive standards" in the following

areas: maintain attention for a two-hour segment; work in coordination with or proximity to

others without being unduly distracted; ask simple questions or request assistance; accept

instructions and respond appropriately to criticism from supervisors; get along with co-workers

or peers without unduly distracting them or exhibiting behavioral extremes; and respond

appropriately to changes in a routine work setting.  (*Id.*).  Plaintiff had "no useful ability to

function" in the following areas: sustain an ordinary routine without special supervision; make

simple work-related decisions; complete a normal workday and workweek without interruptions

from psychologically based symptoms; perform at a consistent pace without an unreasonable

number and length of rest periods; and deal with normal work stress.  (*Id.*).  Dr. Friedeman found

that plaintiff either was unable to meet the competitive standards of, or had no useful ability to

function with respect to, semiskilled and skilled work.  (*Id.*).  Dr. Friedeman opined that plaintiff

was unable to interact appropriately with the general public and his ability to maintain socially

appropriate behavior was seriously limited but not precluded.  (Tr. 489).  Dr. Friedeman

explained that plaintiff's "degree of anxiety, quickly triggered panic, absence of self

confidence/efficacy, subsequent poor concentration and ability to think clearly are barriers to

simple problem solving.  While not to the degree of delusion [he] has feeling people pick up on

his illness."  (*Id.*).  Dr. Friedeman opined that plaintiff experienced moderate restrictions of

activities of daily living, extreme difficulties in maintaining social functioning, extreme

difficulties in maintaining concentration, persistence, or pace, and four or more episodes of

decompensation of extended duration.  (Tr. 489).  Dr. Friedeman concluded that plaintiff would

miss more than four days of work per month as a result of his impairments or treatment.  (Tr.

490).  Dr. Friedeman also opined that plaintiff's impairment had lasted or was expected to last at least 12 months.  (*Id.*).

In the February 2007 questionnaire, Dr. Friedeman reported that he had last seen plaintiff on February 27, 2007.  (Tr. 534).  Plaintiff's medications included Lamictal, Abilify, Provigyl, and Klonopin, and his response to the medications was described as "fair."  (Tr. 535).  Dr. Friedeman described plaintiff's mood as apathetic and depressed, and his affect was congruent. (Tr. 534).  Dr. Friedeman reported that plaintiff exhibited "sluggish thoughts" and difficulty with short term memory.  (*Id.*).  Plaintiff sat forward in a "very unrelaxed posture."  (*Id.*).  He described plaintiff as having poor insight.  (*Id.*).  Dr. Friedeman reported that plaintiff had difficulty following directions due to short-term memory problems; he would easily lose his ability to attend and was easily distracted; he lost interest and energy and his mind wandered, thereby prohibiting the completion of tasks; he avoided social interaction; he did not adapt easily due to "poor coping repertoire"; and he would react to the pressures in work settings or elsewhere involved in simple and routine or repetitive tasks by getting distracted and easily irritated.  (Tr. 535).

## 2. The ALJ's decision to not give the treating psychiatrist's opinion controlling weight is not supported by substantial evidence.

The ALJ declined to give Dr. Friedeman's opinions controlling weight, instead affording the treating psychiatrist's opinions "little weight."  (Tr. 20).  The ALJ identified several reasons for her decision to give reduced weight to Dr. Friedeman's opinions:

> His conclusions are inconsistent with the weight of the objective medical evidence of record, not fully supported by his treatment records, and, as indicated [earlier in the ALJ's decision], seemed to be primarily based upon many of [plaintiff's] subjective complaints.[5]  In fact, there is a notation in Dr. Friedman's

---

[5] The ALJ earlier stated with respect to Dr. Friedeman's August 2006 and February 2007 questionnaires: "A significant number of Dr. Friedman's (sic) conclusions appear to be based upon subjective complaints by the

(sic) records in March 2008 regarding [plaintiff's] upcoming disability hearing, which indicates that there may be some secondary gain and little motivation for improvement in his mental health [Tr. 640]. Dr. Friedman (sic) also fails to discuss his notations of [plaintiff's] non-compliance with counseling.

(Tr. 20).

For the reasons that follow, the Court determines that the ALJ's decision to not give the treating psychiatrist's opinions controlling weight is without substantial support in the record and that the ALJ failed to give "good reasons" for affording only "little weight" to Dr. Friedeman's opinions. *Cole*, 661 F.3d at 937; *Wilson*, 378 F.3d at 544.

### a. Alleged lack of support in Dr. Friedeman's treatment records

The ALJ's conclusion that Dr. Friedeman's opinions are not supported by his own treatment notes lacks substantial support in the record. The ALJ indicated that Dr. Friedeman's assessment of a GAF[6] score of 45 to 50 (serious symptoms, DSM IV at 32-34) in November 2006 was inconsistent with the serious to extreme limitations Dr. Friedeman found at that time. (Tr. 19). The ALJ does not explain why the score is inconsistent with plaintiff's symptoms and an inability to perform substantial gainful activity. According to the DSM, a score of 41-50 means "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational or school functioning** (e.g., no friends, unable to keep a job)." *See* DSM IV at 34 (emphasis in original).

In addition, the ALJ concluded that a "significant number" of Dr. Friedeman's conclusions appeared to be based on plaintiff's subjective complaints (Tr. 19), but the ALJ did

---

[plaintiff]." (Tr. 19).
[6] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34.

not explain her finding and overlooked the extensive number of objective findings in Dr. Friedeman's treatment records.  (*See, e.g.*, Tr. 575, 6/20/06 - noting "marked decompensation indicating need to increase" medication; Tr. 568, 9/26/06 - plaintiff appeared "stressed, tired" and "most prominent is his extreme anergia and lethargy"; Tr. 564, 12/19/06 - plaintiff appeared depressed; Tr. 563, 2/20/07 - noting plaintiff "remains depressed and lethargic"; Tr. 658, 4/17/07 - objective findings noted were "Little emotional expressions; flat"; Tr. 650-51, 10/02/07 - plaintiff appeared to be severely depressed and demonstrated slow speech; Tr. 644-45, 1/22/08 - plaintiff presented with a depressed affect; Tr. 637, 5/13/08 - plaintiff was noted to be depressed and lethargic; Tr. 633-34, 7/8/08 - plaintiff was noted to be anxious and depressed; Tr. 756-57, 4/21/09 - plaintiff seemed anxious and apprehensive, said little spontaneously; Tr. 751-52, 6/16/09 - plaintiff presented with "his usual severe level of depression [and] sense of hopelessness"; Tr. 732-33, 8/11/09 - plaintiff was "severely depressed; appear[ed] hopeless and exhausted; Tr. 728, 10/06/09 - plaintiff's affect was flat and he exhibited little spontaneous speech; Tr. 820, 3/23/10 - plaintiff presented with anxiety; Tr. 801-02, 9/7/10 - plaintiff seemed lethargic and severely depressed).

The ALJ also discounted Dr. Friedeman's opinions based on a notation in the subjective portion of a March 2008 treatment note regarding plaintiff's upcoming disability hearing, which the ALJ found "suggests that there may be some secondary gain and little motivation for improvement in [plaintiff's] mental health."  (Tr. 20, citing Tr. 640).  The notation reads:

> Cooped up in room and constantly depressed.  No good days.  Awaiting final court hearing on disability (?) this summer.
>
> He has too much at stake to improve before that hearing and I shared that with him.

(Tr. 640).  Dr. Friedeman's remark could reasonably be interpreted to mean that Dr. Friedeman

observed that plaintiff may have been motivated to not improve before the disability hearing. However, viewed in the context of Dr. Friedeman's entire treatment notes and balanced against the weight of the medical evidence, the remark does not substantially outweigh the overwhelming evidence in Dr. Friedeman's treatment notes, both before *and after* plaintiff's initial disability hearing, documenting clinical signs of depression and anxiety, the supporting treatment notes of plaintiff's treating mental health sources over the course of several years of treatment, and other evidence of record documenting plaintiff's severe mental limitations.

### b. Alleged non-compliance with counseling

The ALJ also discounted Dr. Friedeman's opinions because Dr. Friedeman failed to discuss "his notations of [plaintiff's] non-compliance with counseling." (Tr. 20). In her decision, the ALJ cited one alleged instance of non-compliance with counseling noted by Dr. Friedeman, which was Dr. Friedeman's July 18, 2006 treatment note. (Tr. 12, citing Tr. 573). In that treatment note, Dr. Friedeman assessed plaintiff as suffering from bipolar depression and generalized anxiety. (Tr. 573). The treatment plan consisted of starting plaintiff on a new medication; increasing the dose of Klonopin in light of plaintiff's "extreme level of anxiety"; and "[e]ncourag[ing] [plaintiff] to set up sessions [with] his therapist[.]" (*Id.*). Dr. Friedeman gave no indication in his treatment note that plaintiff was not complying with scheduled counseling or any other treatment.

The Commissioner incorrectly contends that the ALJ pointed out three other instances where Dr. Friedeman noted plaintiff's noncompliance with counseling. (Doc. 18 at 7, citing Tr. 553, 554, 643). None of these notations concern plaintiff's failure to comply with treatment by Dr. Friedeman. Further, in only one of these three instances is noncompliance with scheduled treatment documented. *See* Tr. 553 (noting a "no show" for a May 2006 appointment with Ms.

Thomas-Turner).  The March 2008 notation cited by the Commissioner shows that Ms. Cooksey

cancelled an appointment due to illness.  (Tr. 643 - "Csp off ill today rescheduled client will call

to reschedule").  Ms. Thomas-Turner noted in April 2006 that the visit was the first time she had

seen plaintiff "in quite a while," but she gave no indication that plaintiff had been noncompliant

with treatment and, if so, the reasons for his noncompliance, and she concluded in her note from

that date that plaintiff agreed to engage in therapy as much as financially able.  (Tr. 554-55).

Indeed, none of plaintiff's mental health counselors indicated that he was noncompliant

with counseling.  To the contrary, there is evidence in the record that plaintiff was very

compliant with his counseling appointments.  In August 2006, Ms. Thomas-Turner reported that

plaintiff kept his psychiatrist appointments "religiously" and he "regularly" kept his monthly

therapist appointments (Tr. 543), and Ms. Thomas-Turner reported in February 2007 that

plaintiff was "very reliable" in keeping his appointments.  (Tr. 538).  Ms. Cooksey reported in

July 2009 that plaintiff attended all scheduled appointments and he was very reliable.  (Tr. 704).

Thus, the ALJ had no factual basis upon which to discount Dr. Friedeman's opinion based on

alleged noncompliance.

### c. *Alleged conflict with objective medical evidence of record*

The ALJ also determined that Dr. Friedeman's conclusions were "inconsistent with the

weight of the objective medical evidence of record."  (Tr. 20).  Yet, the ALJ failed to identify the

objective medical evidence of record that allegedly conflicted with Dr. Friedeman's conclusions.

*See Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not

enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record;

there must be some effort to identify the specific discrepancies and to explain why it is the

treating physician's conclusion that gets the short end of the stick.").  A review of the record fails

to disclose substantial support for the ALJ's finding that Dr. Friedeman's opinion is inconsistent with the weight of the objective medical evidence of record.  In fact, the Commissioner does not dispute plaintiff's assertion in the Statement of Errors that Dr. Friedeman's opinions were consistent with those of plaintiff's case worker, therapist, and state agency reviewing psychologist Dr. Benninger (Doc. 18 at 7).  The only reasonable conclusion to be drawn upon review of the assessments of Dr. Friedeman, plaintiff's counselors, and Dr. Benninger is that their assessments are consistent in all material respects.

### i. The opinions of plaintiff's counselors at Brown County Recovery Services support Dr. Friedeman.

 Dr. Friedeman's findings and assessments were consistent with the mental status and daily activities questionnaires prepared by plaintiff's counselors at Brown County Recovery Services, Ms. Thomas-Turner and Ms. Cooksey.  (Tr. 537-38, 542-43, 699-704, 837-842).  Ms. Thomas-Turner and subsequently Ms. Cooksey saw plaintiff regularly beginning in November 2004.  On August 29, 2006, Ms. Thomas-Turner completed a daily activities questionnaire at the request of the state agency.  (Tr. 542-43).  She reported that plaintiff was living with his parents, who were supporting him.  (Tr. 542).  Ms. Thomas-Turner opined that plaintiff had difficulty getting the energy to complete his daily activities, he tended to avoid many people, and he had no contact with family apart from his parents.  (*Id.*).  Ms. Thomas-Turner also opined that plaintiff had very poor stress tolerance, awareness of hazards, and attendance to detail.  (*Id.*).  She reported that he did not do any food preparation, he did not perform any household chores except for picking up dirty clothes, his hygiene was adequate, he avoided shopping, and driving was a struggle for him due to anxiety.  (Tr. 543).  She reported that his parents helped him in any areas where he required assistance.  (*Id.*).

On February 27, 2007, Ms. Thomas-Turner completed a daily activities questionnaire. (Tr. 537-38).  She reported that plaintiff saw only his parents, with whom he lived, and he had little conversation with them.  (Tr. 537).  Ms. Thomas-Turner noted that plaintiff saw his sons every other weekend and during the visits he would watch them play sports.  (*Id.*).  She reported he had difficulty completing household chores, his personal hygiene was adequate although there was some lack of interest, he did not do any shopping except for hygiene products, he independently drove, and his mother assisted him with food preparation.  (Tr. 538).

On April 28, 2009, Ms. Cooksey completed a Mental Impairment Questionnaire on plaintiff's behalf.  (Tr. 837-42).  She described plaintiff as someone who remains in his room at his parents' home and removes himself from the world.  (Tr. 837).  She identified as his symptoms anhedonia; decreased energy; thoughts of suicide; blunt, flat or inappropriate affect; poverty of content or speech; paranoid thinking or inappropriate suspiciousness; transferal withdrawal or isolation; persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity or situation; and illogical thinking.  (Tr. 838).  She opined that plaintiff was unable to meet competitive standards with respect to several mental abilities and aptitudes needed to do unskilled work, and he had "No useful ability to function" to deal with the stress of semiskilled and unskilled work.  (Tr. 839).  Ms. Cooksey opined that plaintiff had extreme difficulties in maintaining social functioning. (*Id.*).  Ms. Cooksey concluded that plaintiff had a current history of one or more years' inability to function outside a highly supportive living arrangement and a continued need for such arrangement, as well as an anxiety related disorder with a complete inability to function independently outside the home.  (Tr. 841).

19

On July 6, 2009, Ms. Cooksey completed a mental status questionnaire and a daily activities questionnaire. (Tr. 699-704). She reported that plaintiff's dress and hygiene were good. (Tr. 700). His flow of conversation and speech were mechanical and monotonous. (*Id.*). He had a vacant stare, and sometimes appeared detached, although at times he became more animated during a session. (*Id.*). Plaintiff felt others were watching him and talking about him, and he demonstrated irrational thought with respect to socialization. (*Id.*). His insight was limited and his judgment was poor. (Tr. 700). Ms. Cooksey described plaintiff as a housebound recluse who stays in his bedroom and who is close only to his first degree relatives. (Tr. 700, 703). She reported that his three sons visited him at his parents' home, and he had little interaction with his sons. (Tr. 700). When asked to describe examples of issues that might preclude work activities, Ms. Cooksey stated that plaintiff was unable to cope in normal daily interactions with others and was unable to tolerate normal stressors. (*Id.*). Ms. Cooksey reported that plaintiff's parents prepared his food; he performed household chores assigned by his parents; and his parents did his shopping. (*Id.*).

Each of the assessments by plaintiff's mental health therapists is consistent with Dr. Friedeman's opinion of disability.

### ii. Dr. Benninger's opinion supports Dr. Friedeman.

Non-examining state agency psychologist Dr. Benninger reviewed the record and completed a mental RFC assessment on August 25, 2009. (Tr. 705-708). Dr. Benninger opined that plaintiff had no significant limitations in understanding and memory. (Tr. 705). Dr. Benninger opined that plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; to work in coordination or proximity to others without being distracted by them; to ask simple questions or request assistance; to accept instructions and

respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 705-706). Dr. Benninger opined that plaintiff was markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting. (Tr. 706). Dr. Benninger stated that ALJ Smith's prior decision could not be adopted because an Appeals Council review was pending at that time. (Tr. 707). Dr. Benninger summarized Dr. Friedeman's mental statutes questionnaire; Ms. Cooksey's report; and an activities of daily living form. He opined that plaintiff is able to "relate superficially with coworkers and supervisors with minimal interaction with the general public. [Plaintiff] is able to understand, remember and [concentrate] to perform a variety of tasks." (*Id*.). However, Dr. Benninger opined that plaintiff's "ability to withstand stress and pressures of daily work is poor." (*Id*.). Dr. Benninger concluded: "Claimant's low stress tolerance, poor insight as well as his tendency to self isolate would make it highly unlikely for claimant to sustain a 40 [hour] work week at SGA levels." (*Id*.). Dr. Benninger found plaintiff's statements to be credible, and he gave "full weight" to the assessment of Dr. Friedeman. (Tr. 708).

The questionnaires completed by Ms. Thomas-Turner and Ms. Cooksey described an essentially homebound individual who spends the vast majority of his time in his bedroom; whose social interaction is limited to his parents and his sons during their twice monthly visits; who performs limited household chores with assistance or guidance from his parents; whose daily activities are extremely limited; and who is unable to tolerate stress or normal daily interactions with others. These observations and assessments are consistent with the findings

and assessments of Drs. Friedeman and Benninger.  Yet, the ALJ found Dr. Friedeman's opinion

to be inconsistent with the objective medical evidence of record because she found all of the

supporting opinions discussed above to be non-persuasive.  The ALJ in turn rejected Dr.

Benninger's opinion largely because Dr. Benninger relied on Dr. Friedeman's opinion and the

findings and assessments of plaintiff's counselors in rendering his opinion.  The ALJ's circular

reasoning does not withstand scrutiny under the substantial evidence standard for the previously

stated reason that these findings and assessments are all consistent, and because the ALJ's

additional reasons for rejecting Dr. Benninger's assessment are not substantially supported by

the record.

### iii.  The ALJ's rejection of Dr. Benninger's opinion is not supported.

The ALJ noted that Dr. Benninger based his conclusions primarily on the November

2006 assessment of Dr. Friedeman (Tr. 485-490) and the "assessments" of plaintiff's "social

workers," specifically the July 6, 2009 assessment of Debra Cooksey, LSW[7].  (Tr. 13, citing Tr.

699-704).  The ALJ determined that these opinions were entitled to "little weight"; it appeared

Dr. Benninger accepted the opinions of these sources without comparing their statements with

their treatment notes; Dr. Benninger did not discuss the fact that the prior state agency

consultants/doctors did not accept the previous opinion of Dr. Friedeman - specifically, the

March 16, 2007 Catherine Flynn, Psy.D. case analysis affirming as written the September 8,

2006 assessment of Dr. Waggoner (Tr. 603); Dr. Benninger did not discuss the ALJ's prior May

2009 decision to give "little weight" to Dr. Friedeman's opinion; and Dr. Benninger did not

indicate whether plaintiff's disabling condition was expected to last for 12 consecutive months,

---

[7] The ALJ references social workers' "assessments," but she cites only one such assessment.  (Tr. 13).

despite the fact that the ALJ had determined three months prior to Dr. Benninger's assessment that plaintiff was not disabled.  (Tr. 13).

The ALJ's decision to reject Dr. Benninger's opinion is not substantially supported by the record.  While the ALJ faulted Dr. Benninger for failing to address the fact that the previous non-examining state agency psychologists did not accept Dr. Friedeman's opinion, the functional capacity assessment form completed by Dr. Benninger instructs the reviewing source to provide only the following explanations in the narrative section of the evaluation: "Explain *your summary conclusions* in narrative form.  Include any information which clarifies limitation or function.  Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations."  (Tr. 707) (emphasis added).  The reviewing physician is not instructed to explain conclusions other than his own that differ from those of treating medical sources.  (*Id.*).  Moreover, the Court notes that while the Appeals Council instructed the ALJ to reconcile the inconsistency between (1) the ALJ's prior May 18, 2009 decision finding plaintiff was not disabled between the amended alleged onset date of June 1, 2006, and the date of the ALJ's decision and (2) the State Agency's determination that plaintiff became disabled on June 1, 2009, Dr. Benninger was not likewise tasked with reconciling this discrepancy.  Neither the ALJ nor the Commissioner cites any statutory or regulatory authority to show that Dr. Benninger's duty went beyond examining the medical evidence of record in order to render his medical opinion on plaintiff's mental limitations.  *See* 20 C.F.R. §§ 404.1513, 416.913 (describing the information state agency medical source statements should include).

Second, by giving "full weight" to the assessment of Dr. Friedeman, Dr. Benninger demonstrated agreement with Dr. Friedeman's November 2006 assessment that plaintiff's impairment had lasted or could be expected to last at least 12 months.  (Tr. 708).  Thus, Dr.

23

Benninger's alleged failure to express an opinion as to the expected duration of plaintiff's impairment is not a reasonable basis for discounting the opinion.

Finally, the ALJ did not properly discount Dr. Benninger's opinion on the ground Dr. Benninger adopted the opinions of plaintiff's treating psychiatrist, Dr. Friedeman, and plaintiff's case manager, Ms. Cooksey. (Tr. 13, citing Tr. 699-704, 837-842). The ALJ correctly acknowledged that she was not bound to give any weight to the assessments of plaintiff's case manager, Ms. Cooksey. (Tr. 14). Ms. Cooksey is not an "acceptable medical source" under the regulations, 20 C.F.R. §§ 404.1513(a), 416.913(a), and therefore is not considered a "treating source," 20 C.F.R. §§ 404.1502, 416.902. (Tr. 14). The ALJ was thus entitled to reject Ms. Cooksey's opinions as to the degree of plaintiff's limitations in social functioning for the reasons the ALJ stated in her decision.[8] (Tr. 14). However, as an "other source" under the regulations, Ms. Cooksey's observations and opinions are entitled to consideration due to her expertise and long-term relationship with plaintiff. *See Cole*, 661 F.3d at 939 (citing 20 C.F.R. §§ 404.1502, 404.1513(a), (d)(1)). Ms. Cooksey's reports of plaintiff's daily activities are generally consistent with the treatment records of Dr. Friedeman and with the treatment records and reports of Ms. Thomas-Turner[9] (Tr. 537-38, 542-43), a registered nurse and mental health counselor. Thus, the ALJ's decision to discount Dr. Benninger's opinion because none of the reports on which Dr.

---

[8] Ms. Cooksey opined that plaintiff had extreme limitations in social functioning with (1) a current history of one or more years' inability to function outside a highly supportive living arrangement with a continued need for such arrangement (Tr. 836-842), and (2) an anxiety disorder and "complete inability to function independently outside the area of one's home." (Tr. 841).

[9] The ALJ found a number of alleged contradictions in Ms. Thomas-Turner's reports in that she reported plaintiff never visited with friends despite previously reporting that he visited a girlfriend and helped a friend with home repair, and she reported that he kept his appointments "religiously" despite alleged reported noncompliance with counseling. (Tr. 19, citing Tr. 537-38, 542-43). As discussed earlier, although plaintiff had a girlfriend in 2006 and did some home repair work for a friend that year, there is no evidence in the record showing that plaintiff has had social interaction with anyone other than immediate family members since 2006 as reported by his counselors, and the evidence does not contradict his counselors' reports that he was compliant with counseling. In addition, the ALJ did not show that Mr. Thomas-Turner's reports that plaintiff drives and his parents assist him with various activities of daily living conflict with the record. (Tr. 19).

Benninger relied could be credited, despite the consistency among the reports as to plaintiff's daily activity level and social isolation, is not substantially supported by the record.

Dr. Benninger's opinion, together with the treatment records of Ms. Cooksey and Ms. Thomas-Turner, substantially support Dr. Friedeman's opinion. Yet, rather than giving controlling weight to the opinion of Dr. Friedeman, the ALJ gave "little weight" to his opinion. The ALJ instead relied on a portion of the opinion of non-examining state agency reviewing psychologist, Dr. Cynthia Waggoner, Psy.D. (Tr. 19, citing Tr. 445-62).

### iv.  The ALJ's assessment of Dr. Waggoner's opinion is not supported.

The ALJ determined that the functional limitations assessed by Dr. Waggoner in her September 8, 2006 report were entitled to "some weight" for the sole reason that they were "generally consistent with the medical evidence of record, available at that time," but that additional unspecified evidence showed that "slightly greater limitations" were warranted[10]. (Tr. 13). In fashioning plaintiff's RFC[11], the ALJ afforded "significant weight" to Dr. Waggoner's conclusion in that same September 8, 2006 assessment that plaintiff is capable of handling low stress jobs that do not have significant pressure to produce and which do not require substantial interaction with others. (Tr. 19, citing Tr. 461). The ALJ found this portion of Dr. Waggoner's opinion was "consistent with the weight of the objective medical evidence of record and the credible portions of the claimant's allegations and testimony." (Tr. 19). Thus, the ALJ fully credited Dr. Waggoner's conclusion regarding plaintiff's functional limitations, even though the

---

[10] Dr. Waggoner opined that plaintiff had mild restrictions in his activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 455).
[11] The ALJ found that plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine, repetitive work where he does not have contact with the general public, and he is best suited to jobs where he can work alone without frequent contact with coworkers. (Tr. 17).

ALJ gave only "some weight" to Dr. Waggoner's findings on which she based those functional limitations. The ALJ's finding is not supported by substantial evidence.

First, the ALJ never identified the "additional evidence" that became available following Dr. Waggoner's September 2006 assessment which warranted the imposition of "slightly greater limitations" than those imposed by Dr. Waggoner. (Tr. 13). The ALJ did not identify the "objective medical evidence of record" that was consistent with Dr. Waggoner's conclusions which she drew in the September 2006 report. Thus, it is impossible to discern from the ALJ's decision what objective medical evidence she relied on to credit the opinion of the non-examining psychologist, Dr. Waggoner, over the findings and assessments of plaintiff's treating psychiatrist, counselors, and non-examining state agency psychologist Dr. Benninger, who reviewed a significantly more complete record.

Further, the ALJ did not address the fact that Dr. Waggoner's opinion was issued in September 2006, long before the ALJ's November 2010 decision, and thus was not based on a review of the complete case record. The ALJ never acknowledged that Dr. Waggoner did not have the assessments of Dr. Friedeman, Ms. Thomas-Turner, and Ms. Cooksey before her. The ALJ also failed to acknowledge that Dr. Waggoner did not have the opportunity to review the three years of additional treatment records that Dr. Benninger had before him. Because Dr. Waggoner's assessment was based on a small portion of the case record, her opinion was not entitled to greater weight than the opinion of plaintiff's treating psychiatrist. *See Blakley*, 581 F.3d at 408-09 (finding state agency medical consultant's opinion may be entitled to greater weight than the opinions of treating or examining sources pursuant to SSR 96-6p, 1996 WL 374180, at *3, when the state agency medical consultant's opinion is based on a review of the

complete case record and provides more detailed and comprehensive information than was available to the treating source).

In addition, the ALJ did not identify the "credible portions" of plaintiff's testimony that supported Dr. Waggoner's assessment, which is critical to understanding the reasons for accepting Dr. Waggoner's assessment over that of the treating psychiatrist, particularly in light of the fact that Dr. Waggoner found plaintiff to be "generally credible." (Tr. 461).

Finally, the ALJ's decision to afford the functional limitations assessed by Dr. Waggoner "some weight," while giving her conclusions regarding plaintiff's work restrictions "significant weight," is both inherently inconsistent and is not supported by the ALJ's reasons. The ALJ gave only "some weight" to Dr. Waggoner's assessment of plaintiff's functional limitations based on evidence available at the time. (Tr. 13). The ALJ considered unspecified evidence that became part of the record after Dr. Waggoner conducted her review to give greater weight to the conclusions Dr. Waggoner drew from her assessment of plaintiff's functional limitations. (Tr. 19). The Court is unable to discern what objective evidence the ALJ relied on to afford varying weight to different portions of Dr. Waggoner's assessment. Because the ALJ did not identify the additional evidence that supported Dr. Waggoner's opinion on plaintiff's work restrictions, and because the ALJ discounted Dr. Waggoner's assessment of plaintiff's mental limitations on which that opinion was based, Dr. Waggoner's opinion does not constitute substantial evidence to support the ALJ's decision.

### 3. Conclusion

For these reasons, the ALJ's finding that Dr. Friedeman's opinions were inconsistent with the weight of the medical evidence is not substantially supported by the record. The ALJ partially credited the September 2006 opinion of Dr. Waggoner, the non-examining state agency

27

psychologist, over the opinions of plaintiff's treating psychiatrist even though Dr. Waggoner reviewed only a small portion of the record. The findings and opinions of plaintiff's two counselors and non-examining state agency psychologist Dr. Benninger, who reviewed the record three years after Dr. Waggoner, were consistent with Dr. Friedeman's assessments. The ALJ erred by discounting Dr. Friedeman's opinions because the weight of the medical opinion evidence is consistent with Dr. Friedeman's opinions and clearly weighs in favor of a finding of disability.

Even assuming Dr. Friedeman's opinions were entitled to less than controlling weight, the ALJ erred by failing to take into account the remaining regulatory factors that must be weighed in determining what weight to afford the opinions. Under the Social Security regulations, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing former 20 C.F.R. § 404.1527(d)). *See also Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012). The ALJ did not explain her application of many of the factors listed in 20 C.F.R. §§ 404.1527(c)(2), 416.927 to determine the weight to give to Dr. Friedeman's opinion. The ALJ did not examine the length of treatment relationship and frequency of examination; the nature and extent of the treatment relationship; or Dr. Friedeman's specialization. The ALJ determined that a significant number of Dr. Friedeman's conclusions appeared to be based on plaintiff's subjective complaints, but the ALJ did not discuss any of Dr. Friedeman's clinical findings or observations over the course of

28

his treatment of plaintiff.  The ALJ did not discuss Dr. Friedeman's treating regimen.  Nor did the ALJ discuss whether Dr. Friedeman's opinions were consistent with the opinions and observations of plaintiff's counselors, Ms. Cooksey and Ms. Thomas-Turner, "other sources" whose treatment notes were entitled to consideration due to their expertise and long-term relationship with plaintiff.  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) and SSR 06-03p, 2006 WL 2329939, at *2 (stating that information from "other sources" like mental health counselors "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.").  Plaintiff's counselors' findings consistently document plaintiff's profound social isolation, particularly following the termination of a personal relationship in August 2006, and his inability to deal with normal stress.  These findings were consistent throughout the record, and the ALJ did not explain her basis for rejecting Dr. Friedeman's report based on lack of supportability despite the consistency of the findings of the treating medical and "other sources."

Thus, the ALJ did not fulfill her obligation to provide "good reasons . . . supported by the evidence in the case record" for the weight she decided to give to the treating psychiatrist's opinion.  *See Cole,* 661 F.3d at 937, 939 (citation and internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ's failure to consider the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give Dr. Friedeman's opinions, and her failure to provide "good reasons" supported by substantial evidence for her decision to discount Dr. Freideman's opinions, require a reversal of her decision.  Plaintiff's first assignment of error should be sustained.

**B.  The ALJ's credibility finding is not supported by substantial evidence.**

Plaintiff contends that the ALJ erred in assessing his credibility in violation of SSR 96-7p and that the ALJ's credibility determination is not supported by substantial evidence.  (Doc. 12 at 20-24).  The Commissioner alleges that the ALJ thoroughly considered the factors pertinent to plaintiff's credibility and properly determined that inconsistencies in plaintiff's statements diminished his credibility.  (Doc. 18 at 8-12).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981).  "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Title 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain.  First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of

30

pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p.

The ALJ's credibility findings may not be disturbed absent a "compelling reason." *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010).  The Sixth Circuit has held that an administrative law judge's credibility findings are virtually "unchallengeable."  *Id*.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health and Human Servs*., 818 F.2d 461, 463 (6th Cir. 1987)).

Here, the ALJ's credibility determination is not substantially supported by the record and is not entitled to deference.  The ALJ examined the credibility factors in connection with her determination that plaintiff retained the RFC to perform work with certain nonexertional limitations.  (Tr. 21-23).  The ALJ recited each of the relevant factors set forth in 20 C.F.R. §§ 404.1529(c), 416.929(c) and SSR 96-7p.  However, a number of the ALJ's findings are simply boilerplate statements that a particular regulatory factor weighed against plaintiff's credibility with no discussion of the evidence that supported the ALJ's finding.  Although the ALJ stated that plaintiff's allegations of disability are not supported by psychological testing, clinical findings on examination or his treatment history, the ALJ did not discuss plaintiff's extensive treatment history; the clinical findings of his treating psychiatrist as set forth above; and the treatment notes of his counselors.  Nor did the ALJ explain why plaintiff's treatment history is inconsistent with his allegations, other than to discount plaintiff's allegation that his mental

31

symptoms have not improved because plaintiff was unable to explain at the ALJ hearing why "neither he nor his psychiatrist have considered changing his medications if his condition is so disabling, debilitating and has not improved and has in fact gotten worse." (Tr. 17).  In discounting plaintiff's credibility on this basis, the ALJ placed an unfair burden on plaintiff, an individual with a severe mental impairment, to explain his psychiatrist's medical decisions. More importantly, the ALJ ignored treatment records indicating that plaintiff's medications had been changed, but without success.  (*See* Tr. 574-75 - Lamictal increased in 6/06 due to increased decompensation; Tr. 637 - plaintiff reported some lessening of depression with increased dose of Wellbutrin in 5/08; Tr. 757 - Zoloft added in 4/09 for anxiety and phobias; Tr. 752 - Zoloft decreased in 6/09 since it did not seem to have a positive effect on anxiety or depression and it could be causing anxiety and contributing to mood swings).  Dr. Friedeman acknowledged in September 2010 that "Despite numerous intervention attempts by therapy and medications Richard has been largely confined to home and to his bed.  His depression and inactive life style have been resistant to all forms of treatment." (Tr. 801).  The inability of plaintiff's treating psychiatrist to successfully treat plaintiff's mental impairments was not a legitimate basis for discounting plaintiff's credibility.

The ALJ further found that plaintiff's functioning was significantly better than he alleged at the hearing as demonstrated by the medical evidence of record.  (Tr. 22).  The ALJ cited no medical evidence whatsoever to support her finding and, as discussed in connection with plaintiff's first statement of error, ignored the extensive treatment records of plaintiff's treating psychiatrist, Dr. Friedeman, and the records of plaintiff's counselors.  These records consistently support plaintiff's allegations that he rarely leaves his room, and when he does, he either has no social interaction or extremely limited interpersonal contacts.  Nor did the ALJ cite evidence that

supported her contention that the "extreme" assessments of plaintiff's treating sources as to plaintiff's limitations were inconsistent with the record as a whole, relying instead on one statement to support this conclusion.  (Tr. 22).  The ALJ stated: "Even his own doctor suggests that the claimant has too much at stake (Social Security disability benefits) to improve.  Therefore, other opinions, which are more consistent with the entire record as a whole, are given greater weight."  (Tr. 22).  While the statement cited by the ALJ raises a question about plaintiff's motivation to improve, when balanced against the remaining evidence, it does not constitute substantial evidence that the findings and functional limitations imposed by plaintiff's treating psychiatrist were inconsistent with plaintiff's actual mental limitations.

       In addition, the ALJ determined that plaintiff's activities of daily living were inconsistent with his complaints and alleged limitations, but she did not cite evidence that provides substantial support for her finding.  (Tr. 22).  Earlier in her decision, the ALJ reviewed plaintiff's daily activities as reported to various sources and as set forth in a third-party function report completed by plaintiff's father (Tr. 269-276), which the ALJ found to be consistent with each other.  (Tr. 18).  The ALJ determined those activities "reflected a more active lifestyle" than spending 23 hours each day in plaintiff's room and these activities showed plaintiff had more social interaction than he testified to at the hearing.  (*Id.*).  However, a review of the record shows that plaintiff's testimony and statements are consistent with plaintiff's self-reports, the findings of his treating psychiatrist and mental health counselors, and his father's third-party function report.

       The ALJ summarized plaintiff's testimony and statements as reported to third parties as follows: Plaintiff was dating someone but she ended the relationship in 2006 because of his bipolar disorder.  Plaintiff typically spends 23 hours per day in his bedroom.  He never prepares

33

meals but he may reheat leftovers.  He is able to shop on his own, but only occasionally and for

short periods of time.  He is able to drive, but he only drives one to two times per week.  Plaintiff

reported to Dr. Berg in August 2006 that he drives, cooks, cleans, shops and does laundry, but he

shares these duties with his mother.  (Tr. 18, citing Tr. 439-443).  Plaintiff also reported to Dr.

Berg that he watches television and visits with his girlfriend.  The record includes a few

notations about plaintiff researching his depression on the internet and reading about bipolar

disorder.  (*Id*., citing Tr. 544, 2/07 notation; Tr. 758, 9/09 notation by Ms. Cooksey indicating

plaintiff read articles on bipolar disorder and she was providing him with more articles).

Plaintiff is able to wash, dress and attend to his personal hygiene needs.  Treatment records note

that plaintiff mows the lawn for his parents.  (*Id*., citing Tr. 550).  He attends group counseling

once a week for two hours and appears to have no problem with active participation.  In addition,

although he alleges that he does not socialize with group members during the session, there is

some evidence that he has socialized with other members of the group.  (*Id*., citing Tr. 807).  He

visits with his sons every other weekend; he testified that he went to one of his son's soccer

games with his father during the school year in which the ALJ hearing took place; and he went to

a few of his son's basketball games during that same school year.  (Tr. 18).  Plaintiff went on

vacation with his parents in October 2006 (*Id*., citing Tr. 539) and reportedly went to Florida for

vacation in April 2007.  (*Id*., citing Tr. 659).  Although he reported to his counselor that he was

staying in his room most of the time, he also said that he went fishing with his sons and hoped to

do more fishing as the weather warmed up.  (*Id*., citing Tr. 654).  In September 2008, plaintiff

reported going on a trip to the Smokey Mountains with his parents.  (*Id*., citing Tr. 621).  In

October 2008, plaintiff reported that he took his sons to a fair.  (*Id*., citing Tr. 695).

The record evidence as summarized by the ALJ does not substantially support a finding that plaintiff has misrepresented or exaggerated his mental symptoms.  Much of the evidence that the ALJ relied on to discount plaintiff's allegations does not contradict plaintiff's complaints of nearly complete social isolation and an inability to handle the stress of a normal daily routine. Evidence that plaintiff is able to attend to his personal hygiene needs, that he twice researched his depression on the internet and read about bipolar disorder, that he occasionally goes to the store, and that he mows the lawn for his parents and performs some limited household chores does not contradict plaintiff's allegations regarding his symptoms.  To the extent the ALJ relied on evidence that plaintiff chose to attend group therapy, this should not have diminished plaintiff's credibility regarding his allegations that he generally spends 23 hours each day in his room and avoids interaction with anyone other than his parents and sons.  *See Johnson v. Commissioner of Social Security*, No. 12-2249, 2013 WL 5613535, at *8 (6th Cir. Oct. 15, 2013) ("A claimant should not be penalized for following through with treatment related to a claimed disability.").

The ALJ relied on isolated portions of the record to suggest that plaintiff's level of functioning is higher than alleged, when in fact the cited evidence does not support the ALJ's credibility determination.  For instance, the ALJ noted that plaintiff reported to Dr. Berg that he "visits with his girlfriend" (Tr. 18), but the ALJ failed to mention there are no reports of social visits with anyone other than immediate family members since the termination of that relationship in August 2006.  The record shows that plaintiff performed some home improvement work for a limited number of hours in November and December 2006 (Tr. 546-548), but there is no indication that he has engaged in that type of activity since 2006.  Plaintiff

did report to Ms. Thomas-Turner in September 2006 that he mowed the lawn and attended his

sons' soccer games, but her notes indicate this was the extent of his activity and that

he remained socially isolated.  She wrote:

> He reports feeling the same with no motivation or energy.  He has interest and
> will mow the lawn for his father but this is the extent of his activity.  He does get
> himself to sons' soccer games but it can be a struggle.  We discussed the
> possibility of including sons+/or parents in psycho education sessions to de-
> mystify for sons "what's wrong with dad."

(Tr. 550).  Ms. Thomas-Turner reported in June 2007 that plaintiff had gone fishing with his sons

and hoped to be able to do so again, but she also noted at that time that "Rick is staying isolated

in his room most of the time."  (Tr. 654).  Plaintiff reported in October 2008 that he took his sons

to a fair, but he also stated he sat in the bleachers while his sons explored the fair with a friend

and that one of his sons occasionally came back to check on him.  (Tr. 695).  While treatment

notes from plaintiff's group therapy sessions show that plaintiff played cards with other members

of his therapy group during a break on one occasion in August 2010, this was noted to be a first-

time occurrence and the extent of his "socializing" with group members.  (Tr. 807).  The ALJ

accurately found that treatment notes show that plaintiff went on annual vacations with his

parents between 2006 and 2008 (Tr. 549, 621, 659), but other than these trips and the few

isolated occurrences noted above, there are no reported instances of plaintiff leaving his home or

his bedroom for an extended period of time between 2006 and the date of the ALJ's decision.

A review of the record shows that plaintiff's allegations concerning his mental limitations

are supported by the observations and findings of his treating counselors and psychiatrist, as well

as by the statements of his father.  In deciding otherwise, the ALJ ignored evidence that supports

plaintiff's allegations and selectively referenced portions of the record which cast plaintiff "in a

capable light to the exclusion of those portions of the record which do not."  *See Howard v.*

36

*Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002). For these reasons, the ALJ's credibility finding is not entitled to deference. Plaintiff's second assignment of error should be sustained.

### C. The ALJ did not fail to consider the third-party function report.

Plaintiff alleges as his third assignment of error that the ALJ erred by failing to discuss a third-party function report completed by plaintiff's father on January 19, 2007, at the request of the state agency. (Doc. 12 at 24-25). Plaintiff alleges that the statement corroborated statements made by plaintiff, Dr. Friedeman, and plaintiff's mental health counselors concerning plaintiff's symptoms and functioning. Plaintiff contends that the ALJ was obligated to consider this evidence pursuant to the Social Security rules and regulations, which require the ALJ to make a credibility finding based on consideration of the entire record, including information provided by individuals with special knowledge of the individual who may provide insight into the severity of the individual's impairments and how they impact the individual's ability to function. *See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

After summarizing plaintiff's activities, the ALJ stated that plaintiff's father had completed a third-party function report that contained allegations similar to those made by plaintiff. (Tr. 18, citing Tr. 269-276). The ALJ found that the activities both as alleged by plaintiff and reported by his father reflected a more active lifestyle than spending 23 hours a day in plaintiff's room and demonstrated more social interaction than plaintiff testified to at the hearing. (Tr. 18). The ALJ's decision thus shows that she considered the statements made in the third-party function report. Plaintiff's third assignment of error should be overruled.

**D.  The ALJ erred by relying on an improper hypothetical to the VE.**

Plaintiff alleges that the ALJ erred by relying on an improper hypothetical to the VE that did not accurately reflect all of his limitations.  (Doc. 12 at 25-26).  Specifically, plaintiff alleges that the ALJ failed to incorporate limitations imposed by Dr. Friedeman in his November 2006 assessment.  (Tr. 485-490).  The Commissioner argues that the ALJ properly included in the hypothetical to the VE only those limitations she accepted as credible.  (Doc. 18 at 12-15).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).  The Commissioner may meet her burden through reliance on a vocational expert's testimony in response to a hypothetical question.  To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's physical and mental limitations.  *See Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Howard,* 276 F.3d at 241; *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

Here, a number of the hypotheticals in a series propounded to the VE by the ALJ failed to accurately reflect plaintiff's mental limitations.  The ALJ first asked the VE to assume an individual who would be limited to simple, routine repetitive work, which did not involve strict production standards, which would generally involve working alone, and which would not involve frequent contact with coworkers.  (Tr. 80).  The VE responded that the hypothetical individual could perform the jobs of medium unskilled industrial cleaner (8,700 local jobs and 1,300,000 national jobs) and press operator (250 local jobs and 39,000 national jobs); light unskilled cleaner (2,000 local jobs and 343,000 national jobs); and sedentary unskilled

38

inspector/tester (1,000 local jobs and 90,000 national jobs) and surveillance system monitor (150

local jobs and 25,000 national jobs).  (Tr. 80-81).  The ALJ then asked the VE to assume an

individual who "has the capacity to handle low stress jobs that do not have significant pressure to

produce and which do not require substantial interaction with others."  (Tr. 80).  The VE

answered that the hypothetical individual would be able to perform the press operator and light

and sedentary jobs previously identified.  (Tr. 81).  When the ALJ asked the VE to assume the

limitations imposed by Dr. Friedeman in his November 2006 assessment (Tr. 485-490), the VE

testified that the hypothetical individual who was limited in the manner assessed by Dr.

Friedeman could not do any work because the evaluation suggested the individual would have

"no ability to function in some areas that are important even in unskilled work, as well as an

inability to meet competitive standards in many others."  (*Id*.).  In rendering her decision, the

ALJ relied on the hypotheticals that omitted the limitations imposed by Dr. Friedeman to find

plaintiff could perform unskilled work that exists in significant numbers in the national economy.

(Tr. 24).

   The hypothetical questions on which the ALJ relied failed to accurately portray plaintiff's

mental impairments because they omitted the limitations assessed by plaintiff's treating

psychiatrist, Dr. Friedeman.  The VE's testimony in response thereto does not constitute

substantial evidence that plaintiff could perform the jobs identified by the VE.  *See White v.

Commissioner of Social Sec*., 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on

answer to hypothetical question because it simply restated RFC which did not accurately portray

claimant's physical and mental impairments).  Therefore, plaintiff's final assignment of error

should be sustained.  The ALJ's decision that plaintiff is not disabled should be reversed on this

ground.

**IV.  This matter should be reversed for an award of benefits.**

When the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.  The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 782 (6th Cir. 1987).  The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Faucher,* 17 F.3d at 176; *see also Felisky v. Bowen,* 35 F.3d 1040, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).  Such is the case here and remand would serve no purpose other than delay.

The state agency found plaintiff entitled to an award of benefits following an initial unfavorable determination by the ALJ.  The ALJ was provided an opportunity to reconcile any discrepancy between her initial decision finding no disability and the state agency's subsequent disability determination.  The ALJ failed to properly resolve the discrepancy.  Instead, the ALJ decided to give less than controlling weight to the opinion of the treating psychiatrist, which was consistent with the overwhelming weight of the evidence of record, based on the 2006 assessment of a non-examining state agency psychologist that the ALJ only partially credited.

In light of the procedural history of this case and the extensive proceedings that have

40

occurred to date, remanding the matter for a third hearing before the ALJ would serve no purpose. The instant record is fully developed and Dr. Friedeman's opinion of plaintiff's functional limitations is consistent with the record evidence, including the most recent assessment of a non-examining state agency psychologist. Based on Dr. Friedeman's assessment of plaintiff's functional limitations, and the VE's testimony that such limitations would preclude plaintiff from performing substantial gainful employment, a finding of disability is warranted. Given the strong evidence of disability, reversal, and not remand, is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."). Accordingly, the undersigned recommends that the ALJ's decision be reversed and remanded for an award of benefits.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion and remanded for an award of benefits.

Date: 11/12/13                                      s/Karen L. Litkovitz
                                                    Karen L. Litkovitz
                                                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RICHARD A. JODREY,                                    Case No. 1:12-cv-725
      Plaintiff,                                      Barrett, J.
                                                      Litkovitz, M.J.

     vs.


COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).